UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
                                 :
MINGGUO CHO,
                                 :
                 Plaintiff,          REPORT & RECOMMENDATION
                                 :
         -against-                   11 Civ. 1658 (PAC)(MHD)
                                 :
CITY OF NEW YORK,
DEPT. OF BUILDINGS,              :

                 Defendants.  :

--------------------------------X
TO THE HONORABLE PAUL A. CROTTY, U.S.D.J.:


     Pro se plaintiff Mingguo Cho commenced this lawsuit on March

10, 2011, asserting claims under the Age Discrimination in

Employment Act, 29 U.S.C. §§ 621, et seq. (the "ADEA"), the New

York State Human Rights Law, New York Executive Law §§ 290, et seq.

(the "NYSHRL"), and the New York City Human Rights Law, New York

City Administrative Code §§ 8-101, et seq. (the "NYCHRL"). He

claims that the City of New York and the New York City Department

of Buildings ("DOB") discriminated against him on the basis of his

age in rejecting his application for the position of Construction

Inspector, despite his scoring higher on the required civil service

examination than others who were hired for the position. He further

claims that the defendants retaliated against him for seeking the

help and influence of Councilman John Liu in the review of his

1

application.

Defendants have moved for summary judgment. We recommend that the motion be granted.

THE FACTUAL RECORD

In March 2007, Mr. Cho applied for and took the civil service examination; at the time of the examination, he was 59 years old. (Compl. ¶¶ 7-10).[1] He sat for the examination with the prospect of obtaining a position at the DOB as a Construction Inspector. (Id. ¶ 8). Although the Construction Inspector positions were limited, there were vacancies at the time of plaintiff's application. (See City Defs.' Local Rule 56.1 Statement of Undisputed Facts ("Defs.' Rule 56.1 Statement") ¶¶ 1, 3).

However, the DOB was not immune to the financial instability that attended the year 2008 and consequently suffered budgetary constraints. (Decl. of Gina Betro ("Betro Decl.") ¶ 10).[2] Thus, the

---

[1] The application did not list his birthday, but did list the years that he graduated from both high school and college. (See Compl. Ex. F; Rebuttal to City Defs.' Statement of Undisputed Facts ("Pl.'s Rule 56.1") 4).

[2] Plaintiff disputes this fact. (See, e.g., Pl.'s Rule 56.1 4).

DOB instituted an external hiring freeze at the time of plaintiff's application, deciding to appoint only eligible candidates, instead of hiring external candidates, for vacant DOB positions. (Id.).

In or around December 2006, the City of New York Department of Citywide Administrative Services (hereinafter the "DCAS") issued a Notice of Examination, which detailed the duties and responsibilities of the Construction Inspector position for which it was hiring. (Defs.' Rule 56.1 Statement ¶ 4). Mr. Cho's wife found the Notice of Examination on the Internet and provided it to him. (Id. ¶ 5; Decl. of Assistant Corporation Counsel Kuuku Minnah-Donkoh ("Minnah-Donkoh Decl.") Ex. C, Dep. of Mingguo Cho ("Cho Dep.") at 55:6-15, Aug. 26, 2011). In order to qualify for consideration, the applicant must score at least a seventy (70) percent on the civil service examination, be able to understand and be understood in English, and have the required working and educational experiences. (Minnah-Donkoh Decl. Ex. B, at 13-14). The required experiences included, inter alia, "[f]ive years of full-time, satisfactory experience working in the construction trades," or "[t]hree years of full-time, satisfactory work experience [in the construction trades] . . . and two years of formal training or education in an acceptable construction program, given in a college, technical school or trade school." (Id. at 13). The

3

application did not specify an age requirement for the general examination. (See id. at 13-15).[3]

After a civil service examination is administered, the DCAS frequently provides a list of eligible candidates in rank order of their examination scores. (Betro Decl. ¶ 4). Following publication of the list, DCAS is required to certify a minimum of three candidates as eligible for the position, to ensure that the DOB is provided with multiple options in its effort to fill the position. (Id. ¶¶ 4-5). Upon receipt of the list of eligible candidates, the DOB is permitted to use its discretion in the hiring process, within limitations. The most pertinent hiring limitation is the so-called "one-in-three" rule. (Id. ¶ 5). The rule works as follows: if any candidate is considered and not selected for employment three times, that candidate is removed from the list of eligible candidates promulgated by DCAS and is thereafter no longer considered for appointment by the DOB for the vacant position. (Id. ¶¶ 6-7).

On March 2, 2007, plaintiff took the required civil service

---

[3] In addition, he was required to pay a fee to DCAS and make out a money order to the department, on which he had to list his full name, social-security number, and exam number. (Minnah-Donkoh Decl. Ex. B, at 15).

4

examination. (See Cho Dep. at 56:6-7; Defs.' Rule 56.1 Statement ¶ 11). On December 7 of the same year, he received his score on the examination, a 73.75. (Defs.' Rule 56.1 Statement ¶ 13). Three days later, on December 10, the DCAS promulgated its "Certification/Disposition Turnaround Document," which effectively identified and listed forty-seven certified candidates who were eligible for the Construction Inspector position. (See id. ¶ 14; Minnah-Donkoh Decl. Ex. E). The list was provided to the DOB in rank order of the examination scores; plaintiff was ranked 28th. (Id. at CHO000016).[4] The list indicated the birth dates of only the appointed applicants, and whether any candidates were "underage" at the time of filing. (E.g., id. at CHO000003, CHO000014).[5]

The DOB ultimately appointed thirty-one of the candidates listed in the December 10 Certification/Disposition Document. (Betro Decl. ¶ 11). Mr. Cho was considered but was not selected for the Construction Inspector position. (Id.; Minnah-Donkoh Decl. Ex. E, at CHO000002 (abbreviation "CNS" means that a candidate was

---

[4] Plaintiff's birth date was not listed. (See Minnah-Donkoh Decl. Ex. E, at CHO000016).

[5] The version of the Certification/Disposition Turnaround Document that appears in the record indicates which eligible candidates were chosen for appointment, and which were considered for the position but not appointed. (See Minnah-Donkoh Decl. Ex. E, at CHO000001).

considered but not selected), CHO000016 (indicating that Cho was "CNS")). While the hiring freeze was maintained, the DOB still adhered to the aforementioned "one-in-three rule"; prior to the list's expiration on January 9, 2008 -- the day on which defendants no longer used the December 10, 2007 list of eligible candidates (see id. at CHO000001) -- plaintiff was considered but not selected on three occasions. (Betro Decl. ¶¶ 10-11). Accordingly, his name was stricken from the list of eligible candidates for the position of Construction Inspector.[6] (Id.).

Of the thirty-one candidates who were selected for the position, five scored the same as plaintiff, five scored lower than plaintiff, and the remaining twenty-one achieved a higher score.

---

[6] Subsequently, on February 27, 2008, DCAS certified a new set of seventeen candidates for consideration for the contested position; twelve of them were appointed, again all in-house candidates. (See Minnah-Donkoh Decl. Ex. F, at CHO000023; Betro Decl. ¶¶ 12-15). Mr. Cho was not on that list of eligible candidates, as he had previously been eliminated from consideration pursuant to the "one-in-three" rule. (See Betro Decl. ¶¶ 11, 13). Plaintiff asserts that the "one-in-three" rule did not actually apply in his case because the DOB was hiring only internal candidates. Thus, he argues, if he were not chosen because he was an outside hire, it would not matter if defendants employed the one-in-three rule unless that decision was made after he were chosen for consideration each of the three times. (See Rebuttal to Decl. of Gina Betro, at 16). However, it appears that the DOB did consider plaintiff for hire, but he did not meet their hiring criteria at the time, which included current employment with the DOB. (See Betro Decl. ¶¶ 10-11).

(See generally Minnah-Donkoh Decl. Ex. E). Moreover, four
candidates who scored higher than plaintiff -- candidates one,
five, sixteen, and seventeen -- were appointed to the position
despite their being older than Mr. Cho. (Id. at CHO000008,
CHO000009, CHO000012).[7] Because of the hiring freeze, the DOB
appointed only in-house candidates. (See Betro Decl. ¶¶ 10-15).[8]

On June 18, 2009, Mr. Cho visited DCAS to inquire about the
status of his application for the Construction Inspector position.
(Defs.' Rule 56.1 Statement ¶ 28). An employee of DCAS -- whom
plaintiff was unable to identify during his deposition (Cho Dep. at
81:18-82:23; Compl. Ex. B) -- informed him both of his examination
score and his comparative ranking. (Compl. ¶¶ 14-15). The same
employee also notified plaintiff that he had not been appointed to
the desired position. (Id.; Defs.' Rule 56.1 Statement ¶ 28).
Plaintiff inquired as to why he was not hired, and the DCAS
employee stated that it was not necessary for defendants to provide
Mr. Cho with a reason for their decision. (Id. ¶ 29; Compl. ¶ 17).

---

[7] Mr. Cho asserts that this fact is irrelevant because these
four candidates were existing DOB employees. (See Pl.'s Rule 56.1
5).

[8] Plaintiff disputes this fact, asserting that hire number
37 was an external candidate, but he provides no evidentiary
basis for his assertion. (See, e.g., Minnah-Donkoh Decl. Ex. E,
at CHO000018; Pl.'s Opp'n 11; City Defs.' Reply Mem. of Law in
Further Supp. of its Mot. for Summ. J. ("Defs.' Reply") 2).

In the wake of his conversation with the unidentified DCAS employee, plaintiff sent a letter to then-Councilman John Liu regarding the rejection of his application for the Construction Inspector position. (See Compl. Ex. C, at 18; Ex. D, at 21).[9] Neither plaintiff nor his wife informed Councilman Liu that they believed that the DOB's decision not to appoint him was motivated by discrimination. (See Cho Dep. at 102:24-103:8). Councilman Liu replied to Mr. Cho's letter and explained that his office had been informed that Cho had been considered, but not selected, for the Construction Inspector position; Liu also instructed plaintiff to contact the DOB and notify them that he would like to be restored to the list of eligible candidates. (Minnah-Donkoh Decl. Ex. D, at 21, Oct. 16, 2009).

On October 21, 2009, after receiving the letter from Councilman Liu, Mr. Cho sent a letter to the DOB requesting that he be restored to the list of eligible candidates for the Construction Inspector position. (Minnah-Donkoh Decl. Ex. G, Oct. 21, 2009). Plaintiff claims that he received no response to his October 21 letter. (Compl. ¶ 23). Some months later, on May 14, 2010, Mr. Cho

---

[9] According to plaintiff, it was not he who originally contacted Councilman Liu, but rather his wife. (See Cho Dep. at 100:8-20).

appeared at the DOB to inquire about the status of his October 21 letter request. (Defs.' Rule 56.1 Statement ¶ 36). While he was there, an unidentified DOB employee reiterated that Mr. Cho would not be appointed to the position of Construction Inspector. (Id.).

On or about September 1, 2010, plaintiff filed an intake questionnaire with the EEOC through counsel. (Id. ¶ 37; Compl. Ex. G, at 34-41; Cho Dep. at 11:14-17).[10] The document reflected Mr. Cho's intent to file a charge with the EEOC, because he believed that the DOB had discriminated against him on the basis of race, age, national origin, and color, and had retaliated against him for engaging in protected activities. (Compl. Ex. G, at 35). When prompted to identify his "color" and "national origin," plaintiff stated that he is Asian and of Taiwanese origin.[11] (Id.).

_____

[10] Plaintiff was represented by an attorney when he filed his charge. (See Compl. Ex. G, at 38-39). He retained his attorney at least through December 22, 2010. (See id. at 41).

[11] During Mr. Cho's deposition, he stated that his then-attorney -- a friend of Mr. Cho's who aided him at the outset of this lawsuit -- filled out the EEOC questionnaire on his behalf. (Cho Dep. at 67:20-68:5). Thus, Mr. Cho was unaware that he had alleged discrimination based on race, color, and national origin. (Id. at 67:5-9). In addition, in his rebuttal to defendants' motion for summary judgment, plaintiff indicates that he is also alleging national-origin discrimination in the present suit. (See Pl.'s Rebuttal 1). However, during his deposition, plaintiff testified that his only claims against the defendants were based on age discrimination and retaliation. (Id. at 68:10-15). This representation is reflected in the complaint, which pleads only claims of age discrimination and retaliation. (See generally

On December 17, 2010, the EEOC issued Mr. Cho a Notice of Right to Sue, acknowledging that less than 180 days had passed since the time of his filing the charge and notifying him that the Commission was closing his case. (Id. Ex. H). This meant that he had to file this lawsuit under the ADEA within 90 days of his receipt of the Notice in order for it to be timely. (Id.).

On March 10, 2011, Mr. Cho timely commenced this action alleging age discrimination and retaliation. (See generally Compl.).

When questioned at deposition regarding the foundations of his allegation that defendants had discriminated against him on the basis of his age, Mr. Cho answered: "[B]ecause that's the only reason I can figure out." (Cho Dep. at 68:18-24). When pressed to identify the support for his proffered reason, he intimated that it was the only "reasonable" basis that could be discerned from the DOB's failure to hire him. (Id. at 69:4-8). Moreover, plaintiff insinuated that age discrimination could have occurred because his application for the Construction Inspector position included the years of his college attendance and his graduation. (Id. at 72:7-

---

Compl.).

10

73:4).

Mr. Cho also testified that his age-discrimination and retaliation claims were incited by an unidentified individual at the New York City Commission on Human Rights ("CCHR"). (Id. at 75:15-78:3). Plaintiff contends that that individual intimated that the defendants had discriminated against him on the basis of his age, suggesting that the DOB would rather appoint younger individuals to vacant positions than older individuals. (See id. at 77:9-78:3).[12] Mr. Cho understood that the unidentified individual who made the comment was not an employee of the DOB or the City of New York. (Id. at 78:23-79:20). That is to say, plaintiff was aware that no one from the DOB or the City of New York had ever suggested that he had been denied appointment to the position of Construction Inspector on account of his age. (Id. at 79:21-80:1). He explained that his suspicion that he had been discriminated against due to his age was reinforced because the DOB refused to offer him an explanation as to why he was not appointed to the position. (Id. at 93:21-94:18).

_____

[12] The CCHR investigator allegedly stated something to the effect of "[h]ey, if you were . . . them, a younger one and an older one, who you going to hire?" (Cho Dep. at 77:21-23).

11

Plaintiff's retaliation claim also stems in large part from the DOB's refusal to inform him as to why he was not appointed to the Construction Inspector position. (Id. at 114:20-115:5, 119:16-120:8, 122:4-8). At his deposition, Cho also alluded to unspecified "suspicious criminal behavior" and "corrupt[ion]" inside of the DOB. (Id.). When asked whether or not he had any documents other than those annexed to his complaint that support his conclusion that defendants had discriminated against him based on his age and had retaliated against him after he contacted Councilman Liu, he cited only the DBA's Certification/Disposition Turnaround Document (Minnah-Donkoh Decl. Ex. G). (Cho Dep. at 125:14-25). Consequently, his personal conclusions regarding the alleged discrimination and retaliation were the sole foundation for his complaint. (See id.).

## THE CURRENT POSTURE OF THE CASE

Mr. Cho seeks damages for alleged age discrimination and retaliation in violation of the ADEA, NYSHRL, and NYCHRL. Plaintiff asserts six separate causes of action. (See Compl. ¶¶ 34-90). Three are age-discrimination claims brought under federal, state, and city law; the three others are retaliation claims. (Id.). Mr. Cho seeks $150,000.00 in damages for each of the six individual violations, amounting to a total of $900,000.00 in damages, plus

12

any applicable costs and attorneys' fees. (Id. ¶ 91 & Prayer for Relief).

At the conclusion of discovery, the defendants moved for summary judgment. They assert that plaintiff's federal age-discrimination claim is time-barred under the ADEA; that plaintiff cannot establish a prima facie case of age discrimination under federal, state, and city law; and that he cannot demonstrate a basis for his retaliation claim. Mr. Cho opposes.[13]

ANALYSIS

I. Summary-Judgment Standards

The court may enter summary judgment only if it concludes that

---

[13] We note that large portions of plaintiff's rebuttal papers consist of conclusions of law or conclusory, self-serving statements regarding the defendants' actions. (See, e.g., Rebuttal to Notice of Mot. for Summ., ("Pl.'s Rebuttal") ¶¶ 4 ("[Defendant] [m]ade a fake document (second eligible list) openly -- forgery!"); Rebuttal to City Defendants['] Mem. of Law in Supp. of its Mot. for Summ. J. ("Pl.'s Opp'n") 10 ("Common sense told" plaintiff that the DOB should be permitted by law to consider only those criteria listed in the application in its hiring decision)). We give these conclusory assertions no weight in the absence of evidentiary support. See, e.g., Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (party opposing motion for summary judgment must proffer supporting evidence in opposition to the motion).

there is no genuine dispute as to the material facts and that, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Shade v. Hous. Auth. of the City of New Haven, 251 F.3d 307, 314 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). It is axiomatic that the responsibility of the court in deciding a summary-judgment motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986); see, e.g., Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson, 477 U.S. at 255; Howley v. Town of Stratford, 217 F.3d 141, 150-51 (2d Cir. 2000).

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record, including "depositions, documents, electronically stored information, affidavits or declarations,"

14

that demonstrate the absence of a genuine issue of material fact.
Fed. R. Civ. P. 56(c)(1); see, e.g., Celotex, 477 U.S. at 322-23,
325; PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir.
2002); Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14,
18 (2d Cir. 1995). If the movant fails to meet its initial burden,
the motion will fail even if the opponent does not submit any
evidentiary materials to establish a genuine factual issue for
trial. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 161
(1970); Giannullo v. City of N.Y., 322 F.3d 139, 140-41 (2d Cir.
2003).


    If the moving party meets its initial burden, the opposing
party "'must do more than simply show that there is some
metaphysical doubt as to the material facts . . . . [T]he nonmoving
party must come forward with specific facts showing that there is
a genuine issue for trial.'" Caldarola, 298 F.3d at 160 (alteration
in original) (emphasis in original) (quoting Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).
When evaluating whether a genuine dispute of material fact exists,
we must view the evidence submitted by the parties in the light
most favorable to the party opposing the summary-judgment motion.
Id. This is particularly true when the party opposing summary
judgment is pro se, in which case we "must read that party's papers

15

liberally and interpret them 'to raise the strongest arguments that they suggest.'" <u>Wali v. One Source Co.</u>, 678 F. Supp.2d 170, 177 (S.D.N.Y. 2009) (quoting <u>McPherson v. Coombe</u>, 174 F.3d 276, 280 (2d Cir. 1999)). However, even a <u>pro se</u> party cannot satisfy his burden by mere reference to the pleadings. <u>See</u>, <u>e.g.</u>, <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d. Cir. 2000); <u>Wali</u>, 678 F. Supp.2d at 177 (citing <u>Champion v. Artuz</u>, 76 F.3d 483, 485 (2d Cir. 1996)). Similarly, "[c]onclusory allegations [or denials], conjecture, and speculation . . . are insufficient to create a genuine issue of fact." <u>Kerzer v. Kingly Mfg.</u>, 156 F.3d 396, 400 (2d Cir. 1998). In short, the non-moving party "'must offer some hard evidence showing that its version of the events is not wholly fanciful." <u>Golden Pac. Bancorp. v. F.D.I.C.</u>, 375 F.3d 196, 200 (2d Cir. 2004) (quoting <u>D'Amico v. City of N.Y.</u>, 132 F.3d 145, 149 (2d Cir. 1998)). The "mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat summary judgment. <u>Anderson</u>, 477 U.S. at 252.

We apply these standards first to the issue of the timeliness of plaintiff's EEOC charge, and then to the merits of his discrimination and retaliation claims.

II. Timeliness of the ADEA Claims

Plaintiff filed this complaint on March 10, 2011, asserting two distinct claims under the ADEA. (See Compl. 1). The complaint alleges that on June 18, 2009, plaintiff was notified by a DCAS employee that he would not be appointed to the Construction Inspector position, an act that he claims was discriminatory based on his age. (Id. ¶¶ 7-17, 34-44). He also alludes to an event on May 14, 2010, when his request to be returned to the list of eligible candidates was denied. (Id. ¶¶ 45-53). He asserts that he was denied reconsideration of his eligibility for hiring, in retaliation for his having complained about the initial denial to a City councilman. (Id.). The defendants assert that both of plaintiff's ADEA claims are untimely. (City Def.'s Mem. of Law in Supp. of its Mot. for Summ. J. ("Defs.' Mem.") 2-4).

A. The Age-Discrimination Claim

"Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) (discussing Title VII). The Supreme Court has held that "refusal to hire" constitutes such a discrete act of

17

discrimination. Id.[14] Discrete acts of discrimination or retaliation are deemed to have "'occurred' on the day that [they] 'happened.'" Id. at 110. If a plaintiff alleges multiple discriminatory acts, each individual act ordinarily triggers "a new clock for filing charges alleging that act." Id. at 113 ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"). "A party, therefore, must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it." Id. at 110; see also 29 U.S.C. § 626(d)(1)(B); Flaherty v. Metromail Corp., 235 F.3d 133, 136 n.1 (2d Cir. 2000) ("To sustain a claim for unlawful discrimination under Title VII and/or the ADEA, a plaintiff must file administrative charges with the EEOC within 300 days of the alleged discriminatory acts.").

In this case, plaintiff's claim for failure to hire arose, at the latest, on June 18, 2009, when Mr. Cho was informed that he was not being appointed to the Construction Inspector Position. (Compl. ¶¶ 13-15). Mr. Cho filed a charge of discrimination with the EEOC

---

[14] "The distinction between discrete acts and a hostile work environment set forth in Morgan also applies to ADEA, § 1981, and NYS Human Rights Law claims." Subramanian v. Prudential Secs., Inc., 2003 WL 23340865, at *5 (E.D.N.Y. Nov. 20, 2003) (citing Staff v. Pall Corp., 233 F. Supp.2d 516, 527-28 (S.D.N.Y. 2000)).

on September 1, 2010. (<u>See</u> Compl. Ex. G; Def.'s Rule 56.1 Statement ¶¶ 37-38). That filing did not fall within the requisite 300-day time period, which closed on April 14, 2010.[15]

We recognize that, in limited circumstances, the court is permitted to excuse late filings for discrimination-based actions based on the equitable doctrines of tolling or estoppel. <u>Morgan</u>, 536 U.S. at 113 (citing <u>Zipes v. Trans World Airlines, Inc</u>., 455 U.S. 385, 393 (1982)). However, such leniency must be "applied sparingly," and the plaintiff bears the burden of demonstrating that such relief is appropriate. <u>Id.</u> at 113-14 (quoting <u>Baldwin Cnty. Welcome Ctr. v. Brown</u>, 466 U.S. 147, 152 (1984)) ("Procedural

---

[15] Plaintiff cannot avoid this result by relying on a "continuing violation" theory. The Supreme Court in "<u>Morgan</u> refused . . . to recognize the continuing violation doctrine in Title VII cases outside the context of a hostile-work-environment claim." <u>Barbaro v. U.S. ex rel. Fed. Bureau of Prisons FCI Otisville</u>, 521 F. Supp.2d 276, 280-81 (S.D.N.Y. 2007); <u>see also Bobbitt v. N.Y.C. Health & Hosp. Corp.</u>, 2009 WL 4975196, at *7 (S.D.N.Y. Dec. 22, 2009). While we read <u>pro se</u> plaintiff's papers liberally, he does not allege that he was employed in a hostile work environment; instead, he alleges only discrete acts of discrimination. Thus, under <u>Morgan</u>, his ADEA hiring claim cannot implicate the continuing-violation doctrine. <u>See</u>, <u>e.g.</u>, <u>Chin v. Port Auth. of N.Y. & N.J.</u>, --- F.3d ----, 2012 WL 2760776, at *16 (2d Cir. July 10, 2012) (holding that the continuing-violations doctrine does not apply to discrete acts as defined in <u>Morgan</u>; court held that discrete acts that fall outside the limitations period "cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period").

19

requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants")); Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000); Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000).

"Equitable tolling of the 300-day statutory deadline 'is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights.'" Gemmill v. Westchester Jewish Ctr., 2012 WL 1871590, at *2 (S.D.N.Y. Apr. 30, 2012) ((quoting Zerilli-Edelglass v. N.Y.C. Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003)). Such tolling is appropriate, for example, when a plaintiff is "unaware of a deadline due to misleading conduct by defendant," (id. (citing Miller v. IT&T, 755 F.2d 20, 24 (2d Cir. 1985)), or when a plaintiff's "mental condition prevented [him] from proceeding in a timely fashion." Id. (citing Brown v. Parkchester S. Condos., 287 F.3d 58, 60 (2d Cir. 2002)).[16]

---

[16] In determining whether equitable tolling should apply, we must consider whether plaintiff has (1) "acted with reasonable diligence during the time period []he seeks to have tolled," and (2) "proved that the circumstances are so extraordinary that the doctrine should apply." Gemmill, 2012 WL 1871590, at *2 (quoting Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d. Cir. 2002)).

Although plaintiff asserts that the age-discrimination charge is timely because the EEOC and the court have "already . . . approved" his case (Pl.'s Opp'n 8), he has not alleged, nor do we discern, that any of the circumstances warranting tolling of the 300-day deadline exist here. Rather, Mr. Cho simply did not take the requisite statutory steps to preserve his ADEA age-discrimination claim. "One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." Brown, 466 U.S. at 151. As the Supreme Court has noted, "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980) (barring a pro se complaint that was filed sixty days after the 300-day deadline).[17] Consequently, because plaintiff filed his EEOC charge more than four months after the deadline under § 626(d) had passed, his ADEA age-discrimination claim must be dismissed as time-barred.

---

[17] Plaintiff also does not demonstrate a basis for invoking equitable estoppel. "[Equitable] estoppel arises if '(i) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (ii) the plaintiff reasonably relied on that misrepresentation to his detriment.'" Kavowras v. N.Y. Times Co., 328 F.3d 50, 56-57 (2d Cir. 2003) (internal quotation marks omitted) (quoting Wall v. Constr. & Gen. Laborers' Union, Local 230, 224 F.3d 168, 176 (2d Cir. 2000)). No such circumstance exists in the present case.

21

B. <u>The Retaliation Claim</u>

Plaintiff suggests that he was retaliated against on May 14, 2010, when he appeared at the DOB to discuss the status of his October 21, 2009 letter and was told that he would not be appointed to the Construction Inspector position. (Defs.' Rule 56.1 Statement ¶ 36). Defendants assert that this claim should be dismissed as time-barred, but do not specifically explain why. (<u>See</u> Def.'s Mem. 4).

We reject defendants' bare assertion that Mr. Cho's May 14, 2010 retaliation claim under the ADEA should be dismissed as time-barred. As we have noted, "each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice,'" which ordinarily triggers "a new clock for filing charges alleging that act." <u>Morgan</u>, 536 U.S. at 113-14. Plaintiff was permitted to file his claim with the EEOC within 300 days of the occurrence of the alleged act of discrimination, in this case by March 10, 2011. Therefore, plaintiff's September 1, 2010 EEOC charge, insofar as based on the alleged retaliation that occurred on May 14, 2010, was filed in a timely manner, and thus his ADEA retaliation claim is not time-barred. (<u>See</u> Compl. Ex. G; Defs.' Rule 56.1 Statement ¶¶ 37-38; Pl.'s Opp'n 9).

III. Age-Discrimination Claims Under the NYSHRL and NYCHRL

Defendants assert that Mr. Cho is unable to establish a prima facie case of age discrimination under the NYSHRL and NYCHRL. (Defs.' Mem. 4-9). Plaintiff opposes, asserting that defendants' June 18, 2009 refusal to hire him was based on his age. (Compl. ¶¶ 34-44). For the reasons that follow, we conclude that Mr. Cho does not make a prima facie showing of age discrimination.

"[A]ge-discrimination suits brought under the State HRL and City HRL are subject to the same analysis as claims brought under the ADEA," Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (citing Lightfoot v. Union Carbide Corp., 110 F.3d 898, 913 (2d Cir. 1997)), and ADEA claims are analyzed under the same burden-shifting framework as claims brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. Id. (citing Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000)). Under this framework, the Supreme Court has held that "a plaintiff must first establish a prima facie case of age discrimination." Id. (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1972)). "A plaintiff's burden of establishing a prima facie case is de minimis." Id. at 467 (citing Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203-04 (2d Cir. 1995)). Upon

23

establishment of a prima facie case, "the employer is required to offer a legitimate, nondiscriminatory business rationale for its actions." Id. If a legitimate, nondiscriminatory reason is proffered, "the presumption of age discrimination dissolves, and the burden shifts back to the plaintiff to prove that the employer's stated reasons are merely pretextual and that age discrimination was the true reason for the adverse employment action." Id. (citing McDonnell Douglas Corp., 411 U.S. at 802-04).[18]

"To establish a prima facie case of age discrimination, a plaintiff must show four things: (1) [that] he is a member of the protected class; (2) [that] he is qualified for his position; (3) [that] he has suffered an adverse employment action; and (4) [that]

---

[18] The Supreme Court has recently clarified the standard for prevailing on an ADEA discrimination claim in Gross v. FBL Financial Services, Inc., 557 U.S. 167 (2009). Prior to Gross, the final question in the burden-shifting analysis was "'whether the evidence in plaintiff's favor, when viewed in the light most favorable to the plaintiff, [was] sufficient to sustain a reasonable finding that her dismissal was motivated at least in part by age discrimination.'" Mattera v. JPMorgan Chase Corp., 740 F. Supp.2d 561, 571 n.8 (S.D.N.Y. 2010) (quoting Tomassi v. Insignia Fin. Grp., Inc., 478 F.3d 111, 114 (2d Cir. 2007)). Gross modified this burden by holding that, instead, a "plaintiff must prove by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision." Gross, 557 U.S. at 177-78. The Second Circuit has clarified that the basic burden-shifting framework of McDonnell Douglas remains intact despite this modification in the analysis. Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010); accord Mattera, 740 F. Supp.2d at 571 n.8.

the circumstances surrounding that action give rise to an inference of age discrimination." Id. at 466-67 (citing, inter alia, McDonnell Douglas Corp., 411 U.S. at 802).

For the sake of this motion, defendants assume, but do not concede, that Mr. Cho satisfies the first three elements of a prima facie showing. (See Defs.' Mem. 5 & n.3). He is over forty years of age, and thus is a member of a protected class.[19] He applied for and -- in view of his achievement on the civil service examination, his English speaking ability, as well as his employment history -- was qualified for the Construction Inspector position at the DOB.[20] He also suffered an adverse employment action when he was denied the DOB position, and defendants continued to seek other qualified applicants for the job. Plaintiff cannot show, however, that the circumstances surrounding the DOB's refusal to hire him give rise

---

[19] Section 631(a) of the ADEA requires that an individual be at least 40 years of age in order to receive the protections of the Act. 29 U.S.C. § 631(a).

[20] To demonstrate his qualification, plaintiff need only show that he has the basic skills necessary to perform the job. See Herbert v. City of N.Y., 748 F. Supp.2d 225, 237 (S.D.N.Y. 2010) (quoting Holcomb v. Iona Coll., 521 F.3d 130, 138 (2d Cir. 2008)). That is to say, Mr. Cho need only meet the threshold standard that "he is competent to perform the job . . ." Dawson v. Bumble & Bumble, 498 F.3d 211, 216 (2d Cir. 2005) (citing Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001)).

to an inference of age-discrimination.

While plaintiff's burden in establishing a <u>prima facie</u> case is <u>de minimis</u>, he may not rely on his "vague recollections of conversations in which third parties are alleged to have made admittedly unsubstantiated suggestions of discriminatory intent" or "inadmissible hearsay." <u>Burke v. Gutierrez</u>, 2006 WL 89936, at *6-7 (S.D.N.Y. Jan. 12, 2006) (citing <u>Sarno v. Douglas Elliman-Gibbons & Ives, Inc.</u>, 183 F.3d 155, 160 (2d Cir. 1999); <u>Phipps v. Comprehensive Cmty. Dev. Corp.</u>, 2005 WL 287413, at *12-13 (S.D.N.Y. Feb. 4, 2005); <u>Rovtar v. Union Bank of Switz.</u>, 852 F. Supp. 180, 185 (S.D.N.Y. 1994)). Moreover, it is well established that "[a]ctions by an individual not involved in the adverse employment decision at issue do not give rise to an inference of discrimination." <u>Chang v. Safe Horizon</u>, 2005 WL 2125660, at *7 (S.D.N.Y. Sept. 1, 2005) (citing <u>McLee v. Chrysler Corp.</u>, 109 F.3d 130, 137 (2d Cir. 1997); <u>Kirnon-Emans v. Am. Mgmt. Ass'n</u>, 2002 WL 523368, at *7 (S.D.N.Y. Apr. 5, 2002)).

In attempting to establish a <u>prima facie</u> case here, Mr. Cho relies on his conversations with three unidentified individuals: an investigator at the CCHR with whom he spoke sometime in 2008, a DCAS employee with whom he spoke on June 18, 2009, and a DOB

employee with whom he spoke on May 14, 2010. (See Cho Dep. at
68:18-23, 75:15-76:19, 78:23-79:20 (CCHR investigator); 82:1-20
(DCAS employee); Defs.' Rule 56.1 ¶ 7 (DOB employee)). Plaintiff
testified that when he and a CCHR investigator had spoken over the
telephone in 2008, the investigator insinuated that he had not been
hired because the DOB preferred to hire a younger candidate. (Cho
Dep. at 77:8-79:20). He also testified that he had also based his
age-discrimination claim on the fact that a DCAS employee had
informed him that she was not required to provide him a reason why
he was not hired. (Id. at 96:16-97:10; Defs.' Rule 56.1 ¶ 28-29).
However, unsubstantiated speculation derived from plaintiff's
recollection of these three conversations cannot suffice to raise
an inference of discrimination. See Burke, 2006 WL 89936, at *7;
see also Sarno, 183 F.3d at 160; Roytar, 852 F. Supp. at 185.

In any event, plaintiff's account of his contact with the
unidentified DOB employee does not offer any inference of age bias.
Furthermore, the DCAS employee and the CCHR investigator with whom
he spoke were not involved in the DOB's hiring decision, and thus
their statements cannot give rise to an inference of
discrimination. See Ellis v. Provident Life & Accident Ins. Co.,
926 F. Supp. 417, 428 (S.D.N.Y. 1996) (quoting Price Waterhouse v.
Hopkins, 490 U.S. 228, 277 (1989)) (stating that "[i]nferences of

intentional discrimination may not be based on 'statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself . . .'"); see also Betro Decl. ¶ 5 (providing that the DOB "exercises its discretion in appointing candidates" to fill vacant positions). Furthermore, the fact that the DOB decided to appoint four employees who are older than plaintiff (see Minnah-Donkoh Decl. Ex. E) all but precludes an inference of age-discrimination based on the DOB's failure to hire him. See Tarshis v. Riese Org., 195 F. Supp.2d 518 (S.D.N.Y. 2002) (citing cases) ("When a plaintiff has been replaced by someone older than himself, maintaining an age-discrimination claim becomes rather difficult because a fact-finder can draw no reasonable, immediate inference of discrimination.").

The Second Circuit has held that "[a] plaintiff cannot establish a prima facie case based on 'purely conclusory allegations of discrimination, absent any concrete particulars.'" Dorfman v. Doar Commuc'ns, Inc., 314 F. App'x 389, 390 (2d Cir. 2009) (quoting Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)). As previously noted, Mr. Cho buttresses his age-discrimination claim solely with conclusory allegations unsupported by an evidentiary proffer. (See, e.g., Cho Dep. at 65:20-25 (plaintiff testified that he believed that the DOB discriminated against him

28

in deciding not to hire him because "[t]hat's the only reason [that he] can figure out"), 96:16-97:10). As he does not proffer any evidence that gives rise to an inference of age discrimination, he cannot meet even the de minimis threshold requirement for demonstrating a prima facie case of age discrimination.

Finally, we note that even if Mr. Cho had satisfied his prima facie burden, his age-discrimination claims would fail. Defendants have invoked a neutral ground for their refusal to hire him -- the budget freeze (see Defs.' Mem. 9-10) -- and although he disputes this contention (e.g., Pl.'s Rule 56.1 4, 6), he has failed to offer any evidence that that explanation is pretextual, much less that it is a mask for age bias. See Tadros v. Brooklyn Dev. Ctr., 112 F.3d 505, 505 (2d Cir. 1996) (defendants' budgetary considerations constitute a legitimate non-discriminatory reason for plaintiff's termination).

29

IV . Retaliation[21]


Retaliation claims under the ADEA and NYSHRL are analyzed in the same manner as retaliation claims under Title VII. Dressler v. N.Y.C. Dep't of Educ., 2012 WL 1038600, at *12 (S.D.N.Y. Mar. 29, 2012) (citing Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 609 (2d Cir. 2006)).[22] The analysis under the NYCHRL must be performed separately; "claims under the City HRL must be reviewed independently from and 'more liberally' than their federal and state counterparts." Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009) (quoting Williams v. N.Y.C. Hous.

[21] "The Supreme Court in Gross did not directly address whether 'but-for' causation is required for ADEA retaliation claims." Mattera, 740 F. Supp.2d at 578 n.13. Courts that have addressed the matter have come down on both sides of the issue. See id. (citing cases) (comparing, e.g., Rasic v. City of Northlake, 2009 WL 3150428, at *17 (N.D. Ill. Sept. 25, 2009) (stating that Gross requires "but-for" causation for ADEA retaliation claims), with Smith v. Xerox Corp., 602 F.3d 320, 328-29 (5th Cir. 2010) (declining to extend Gross's "but-for" causation requirement to Title VII retaliation claims)). We do not need to reach the issue, as plaintiff's claim fails under any version of the retaliation analysis.

[22] The standards and burdens that apply to retaliation claims made under ADEA are identical to those that apply to such claims under Title VII. See Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006); see also Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003). Moreover, retaliation claims made under the NYSHRL are "generally governed by the same standards as federal claims under Title VII" and, therefore, the ADEA. Schiano, 445 F.3d at 609 (citing Smith v. Xerox Corp., 196 F.3d 358, 262 n.1 (2d Cir. 1999); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714-15 (2d Cir. 1996)).

Auth., 61 A.D.3d 62, 66-69, 872 N.Y.S.2d 27, 31 (1st Dep't 2009)).[23]

Section 704(a) of Title VII provides protection for two distinct classes of employees -- those opposing discrimination proscribed by the statute and those participating in Title VII proceedings. See Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005). In pertinent part, section 704(a) of Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his . . . applicants for employment . . . because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

---

[23] The analysis to be undertaken in assessing the retaliation claims by plaintiff is subtly different under the NYCHRL from what it is under the ADEA and NYSHRL. Mr. Cho's state-law claims are "analytically identical" to his federal claims. See Benn v. City of N.Y., 2012 WL 1863977, at *2 (2d Cir. 2012) (citing, inter alia, Petrosino v. Bell Atl., 385 F.2d 210, 220 n.11 (2d Cir. 2004)). "While 'City HRL claims have typically been treated as coextensive with state and federal counterparts . . . the New York City Council has rejected such equivalence.'" Benn, 2012 WL 1863977, at *2 (alteration in original) (quoting Loeffler, 582 F.3d at 278). Thus, the Second Circuit has "remanded cases to the district court where the district court failed to evaluate the NYCHRL claims separately." Benn, 2012 WL 1863977, at *2 (citing Abraham v. N.Y.C. Dep't of Ed., 498 F. App'x 633, 635 (2d Cir. 2010); Kolenovic v. ABM Indus. Inc., 361 F. App'x 246, 248 (2d Cir. 2010)).

31

42 U.S.C. § 2000e-3. We will first conduct the ADEA and NYSHRL analysis, followed by the NYCHRL analysis, although both yield the same outcome.

A. The Retaliation Claim Under the ADEA and NYSHRL

Mr. Cho alleges that the defendants retaliated against him after he sought assistance from Councilman Liu regarding his application for the position of Construction Inspector. (Compl. ¶¶ 45-53, 64-71). At plaintiff's deposition, he testified that when he and his wife contacted Councilman Liu regarding the denial of his application for the Construction Inspector position, they did not inform the Councilman or his office that they believed that the DOB had discriminated against him on the basis of age in refusing to appoint him. (See Cho Dep. at 98:18-103:8).[24] Plaintiff's purpose in contacting Mr. Liu's office was, thus, not to complain of alleged discrimination, but rather to seek the Councilman's help and "influence" in his effort to obtain a job with the DOB. (Id. at 99:1-2).

---

[24] Plaintiff told Mr. Liu that he believed that he did not get the position because he thought that the score that the DOB had calculated for his exam was incorrect. (Cho Dep. at 107:13-108:1).

"To establish a <u>prima facie</u> case of retaliation, [plaintiff] must show (1) that []he participated in a protected activity, (2) that []he suffered an adverse employment action, and (3) that there was a causal connection between h[is] engaging in the protected activity and the adverse employment action." <u>Gorzynski</u>, 596 F.3dat 110 (citing <u>Kessler</u>, 461 F.3d at 205-06).[25]

B. <u>Analysis - ADEA and NYSHRL</u>

"[A] retaliation claim requires a showing that the employer took adverse action against the claimant specifically because the claimant opposed discrimination due to race, gender, or another prohibited factor." <u>Clemente v. N.Y. State Div. of Parole</u>, 684 F. Supp.2d 366, 373 (S.D.N.Y. 2010) (quotation omitted). What constitutes a protected activity under the meaning of the words "opposing" and "participating" in section 704(a) of Title VII

_____

[25] The burden of proof that plaintiff must satisfy for his retaliation claim under the ADEA and NYSHRL to "survive a summary-judgment motion at the <u>prima facie</u> stage has been characterized as 'minimal' and '<u>de minimis</u>.'" <u>Jute</u>, 420 F.3d at 173 (citing <u>Woodman v. WWOR-TV</u>, 411 F.3d 69, 76 (2d Cir. 2005) (quoting <u>Zimmermann v. Assocs. First Capital Corp.</u>, 251 F.3d 376, 381 (2d Cir. 2001))). The determination as to whether this initial burden has been satisfied requires the court to consider "whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." <u>Id.</u> (citing <u>Donahue v. Windsor Locks Bd. Of Fire Comm'rs</u>, 834 F.2d 54, 58 (2d Cir. 1987)).

33

should be broadly construed. <u>Jute</u>, 420 F.3d at 174. Nonetheless, Mr. Cho's communication with Mr. Liu cannot be classified as a protected activity since he was neither engaged in "opposing" any unlawful activity nor in "participating" in any relevant discrimination-related proceeding when he lobbied for assistance with his DOB application. Plaintiff admits that his purpose in contacting Mr. Liu was unrelated to any prior discrimination that plaintiff had allegedly experienced. (<u>See</u> Cho Dep. at 98:18-103:8). As plaintiff did not engage in a protected activity, he cannot satisfy the first element of a <u>prima</u> <u>facie</u> retaliation case under the ADEA and NYSHRL. <u>See</u>, <u>e.g.</u>, <u>Peterec-Tolino v. Commercial Elec. Contractors, Inc.</u>, 2011 WL 5105474, at *4 (S.D.N.Y. Oct. 26, 2011) (finding that plaintiff did not engage in protected activity where the record was "devoid of any evidence" that he had "complained of age discrimination, either formally or informally, before he was terminated" and it was "undisputed" that he had "never filed a written complaint of age discrimination" with his employer or "participated in any other protected activity with respect to his age").

Even if we were to conclude that Mr. Cho did engage in a protected activity, he would still be unable to make a <u>prima</u> <u>facie</u> showing of retaliation. While the defendants did, in fact, take an

34

adverse action against Mr. Cho by refusing him employment --
satisfying the third prong of the test -- he cannot show that that
action was caused by his engaging in any protected activity. Id.
Otherwise stated, Mr. Cho cannot show that his communication with
Councilman Liu "was a substantial motivating factor" in the DOB's
decision to deny him employment. Deters v. Lafuente, 368 F.3d 185,
190 (2d Cir. 2004) (quoting Morris v. Lindau, 196 F.3d 102, 110 (2d
Cir. 1999)).

    In the Second Circuit, "a plaintiff can indirectly establish
a causal connection to support a . . . retaliation claim by
'showing that the protected activity was closely followed in time
by the adverse [employment] action.'" Gorman-Bakos v. Cornell Co-op
Extension of Schenectady Cnty., 252 F.3d 545, 554 (2d Cir. 2001)
(alteration in original) (quoting Reed v. A.W. Lawrence & Co., 95
F.3d 1170, 1178 (2d Cir. 1996)). Alternatively, plaintiff may
establish causation by proffering evidence "that the protected
activity was followed by discriminatory treatment or through
evidence of disparate treatment of employees who engaged in similar
conduct or directly through evidence of retaliatory animus." Sumner
v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990) (citing
DeCintio v. Westchester Cnty. Med. Ctr., 821 F.2d 111, 115 (2d Cir.
1987)). Plaintiff does none of these.

Mr. Cho testified that the sole basis for his belief that the DOB had retaliated against him for his communications with Councilman Liu is that the DOB would not provide him with a reason for the decision not to hire him. (Cho Dep. at 119:16-120:8, 122:4-16).[26] This assertion plainly shows that the only adverse action allegedly taken by DOB was its refusal to hire Cho, which plaintiff first discovered on June 18, 2009. Plaintiff asserts that he sought the help of Councilman Liu only after he had learned of this decision not to appoint him. (Compl. ¶¶ 13-19 (alleging that plaintiff requested Liu's assistance after finding out that he was not hired); Cho Dep. at 98:18-103:8). Because the decision not to hire Cho occurred prior to the asserted protected conduct on which the alleged retaliation is based, it cannot be said to "follow [the protected activity] close in time" -- or to indeed to "follow" it at all. See Ford v. N.Y.C. Dep't of Health & Mental Hygiene, 545 F. Supp.2d 377, 394-95 (S.D.N.Y. 2008) (citing examples) (explaining that retaliatory acts cannot precede the act on which retaliation is based); see also McLee, 109 F.3d at 136. As plaintiff establishes no factual or legal basis to infer that defendants

---

[26] Plaintiff also asserts that he based his retaliation claim on "very suspicious criminal behavior inside" the DOB, which he accused of being corrupt. (Cho Dep. at 119:22-120:8). However, this vague accusation has nothing to do with plaintiff's engaging in a protected activity.

retaliated against him for seeking the assistance of Councilman
Liu, he cannot meet his <u>prima facie</u> burden.

Based on the foregoing, Mr. Cho has failed to make a <u>prima</u>
<u>facie</u> showing of retaliation under the ADEA and NYSHRL.
Accordingly, we recommend that plaintiff's claims for retaliation
under the ADEA and NYSHRL be dismissed.

### C. Standard of Review - NYCHRL

In pressing a retaliation claim under the NYCHRL, "a plaintiff
need not establish that an adverse action was materially adverse.
[He] need only establish that the action was 'reasonably likely to
deter a person from engaging in a protected activity.'" <u>Costello v.</u>
<u>N.Y. State Nurses Ass'n</u>, 783 F. Supp.2d 656, 676 (S.D.N.Y. 2011)
(quoting <u>Williams v. N.Y.C. Hous. Auth.</u>, 61 A.D.3d 62, 70-71, 872
N.Y.S.2d 27, 34 (1st Dep't 2009)). Moreover, the Second Circuit has
held that the "proper inquiry" under the NYCHRL "is whether a jury
could 'reasonably conclude from the evidence that [the complained-
of] conduct [by the employer] was, in the words of the [CHRL],
reasonably likely to deter a person from engaging in protected
activity,' without taking account of whether the employer's conduct
was sufficiently deterrent so as to be material[]." <u>Fincher v.</u>

37

Depository Trust & Clearing Corp., 604 F.3d 712, 723 (2d Cir. 2010)
(alterations in original) (quoting Williams, 61 A.D.3d at 71, 872
N.Y.S.2d at 34).

This "standard governing retaliation claims under the NYCHRL
is different (and broader) than that applicable claims under
federal and state law." Dixon v. Int'l Fed'n of Accountants, 416 F.
App'x 107, 110 n.1 (2d Cir. 2011). Nevertheless, to establish an
NYCHRL retaliation claim, Mr. Cho must show "1) [that] he engaged
in a protected activity; 2) [that] his employer was aware of that
activity; 3) [that] he suffered an action that would be reasonably
likely to deter a person from engaging in a protected activity; and
4) that there was a causal connection between the protected
activity and the action." Id. (quoting Pilgrim v. McGraw-Hill Cos.,
Inc., 599 F. Supp.2d 462, 469 (S.D.N.Y. 2009)). As discussed,
defendants' asserted adverse employment action -- refusing to hire
Mr. Cho -- occurred prior to the conduct on which the alleged
retaliation is based, that is, plaintiff's seeking the help of
Councilman Liu. Thus, Mr. Cho cannot demonstrate a causal
connection between the protected activity and the adverse action.
See, e.g., Ford, 545 F. Supp.2d at 394-495. Consequently,
plaintiff's retaliation claim under the NYCHRL fails for the same
reasons that his claims under the ADEA and NYSHRL do.

Accordingly, we recommend that the defendants' motion for summary judgment as to plaintiff's retaliation claims under the NYCHRL be granted.

## CONCLUSION

For the reasons stated, we recommend that defendants' motion for summary judgment be granted in its entirety.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Paul A. Crotty, Room 735, 500 Pearl Street, New York, New York, 10007-1312. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636 (b)(1); Fed. R. Civ. Pro. 72, 6(a), 6(e); Thomas v. Arn, 474 U.S. 140 (1985); DeLeon v. Strack, 234 F.3d 84, 86 (2d. Cir. 2000) (citing Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)).

Dated: New York, New York
       July 25, 2012

RESPECTFULLY SUBMITTED,

_____
MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Order have been mailed this day to:

Mr. Mingguo Cho
11-29 30th Drive, 1st Floor
Astoria, NY 11102

Kuuku Minnah-Donkoh, Esq.
Corporation Counsel of the City of New York
100 Church Street, Room 2-167
New York, NY 10007